# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4057 | **DATE** | 9/17/2001 |
| **CASE TITLE** | McCain-Sidney vs. Evanston Township High School Dist 202 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Defendant's motion (Doc 22-1) for summary judgment is granted in its entirety. All other pending motions are moot. All matters in controversy having been resolved, final judgment is entered in favor of the defendant and against plaintiff.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

SCT courtroom deputy's initials

number of notices

SEP 18 2001
date docketed

docketing deputy initials

date mailed notice

**Document Number**

35

10-7
FILED FOR DOCKETING
01 SEP 17 PM 3: 16

Date/time received in central Clerk's Office

mailing deputy initials

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

SEP 1 8 2001

| | | |
|---|---|---|
| MONICA McCAIN-SIDNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 00 C 4057 |
| | ) | |
| EVANSTON TOWNSHIP HIGH | ) | |
| SCHOOL DISTRICT 202, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Plaintiff Monica McCain-Sidney ("McCain-Sidney") was terminated from her employment with Defendant Evanston Township High School ("ETHS") in May of 1999. Following her termination, McCain-Sidney filed a complaint against ETHS alleging sexual harassment, sexual discrimination and retaliatory discharge. Last November we granted ETHS's motion to dismiss Count II of the complaint. This matter now comes before the Court on Defendant's motion for summary judgment. For the reasons set forth below, we grant the motion in its entirety.

## BACKGROUND

ETHS employed Monica McCain-Sidney as a night custodial supervisor from October 1997 to May 1999. (Def. Ex. 8, Jones Aff., ¶ 4.) In that capacity, she was charged

25

with supervising and evaluating the work of all custodial employees assigned to the night shift. (Def. Ex. 6 at 1.) As an administrative employee, McCain-Sidney was to serve an initial 90-day probationary period. (Def. Ex. 8, Jones Aff., ¶ 5.) However, after an investigation revealed that she had provided false documentation in an attempt to enroll her children at ETHS, in violation of the District's residency policy, the Board of Education agreed to extend her probationary period through April 20, 1999, rather than terminating her employment. (Def. Ex. 7B-C; Def. Ex. 8, Jones Aff., ¶¶ 6-7.)

From the date of her hire until February 8, 1999, McCain-Sidney alleges that she was sexually harassed by ETHS employee Charlie Milam ("Milam"), union steward for the custodians directly under her supervision. (Compl., ¶ 9; McCain-Sidney Dep. at 52.) Specifically, McCain-Sidney claims that during that period, Milam asked her to be his girlfriend on two occasions, the first time in late October or early November of 1997; he frequently told her that she looked pretty; he told her about rumors that she was sleeping with her supervisor and suggested that if she became his girlfriend, these rumors would stop; and one day in December 1997 he commented that the skirt she was wearing made her "butt" look like a heart. (McCain-Sidney Dep. at 54-55, 62-63, 102.) Milam also asked McCain-Sidney out to lunch and dinner and once invited her to his church. (Id. at 63.) Finally, on February 8, 1999, Milam came into McCain-Sidney's office and, in the presence of her direct supervisor James Agnew ("Agnew"),

asked her for a hug and a kiss. (Id. at 67-68.) In response, Plaintiff said, "I'm sick of you. I'm tired of you asking me to date you, to kiss you, to hug you. . . . This has to stop. And if you do it again, I'm going to call the Evanston Police Department on you." (Id. at 68.)

McCain-Sidney claims she frequently complained to Agnew about Milam's comments and invitations. Invariably, Agnew told her to ignore them as Milam meant "no harm." (Id. at 60-61, 72.) McCain-Sidney ultimately reported the alleged harassment to Janice Jones ("Jones"), Director of Personnel for ETHS, although the parties dispute the number of meetings they had regarding Milam's behavior. McCain-Sidney claims that she spoke to Jones about the alleged harassment on four occasions, both before and after the February 8 incident. (Id. at 87-88.) Jones contends that the only time McCain-Sidney ever told her that Milam was engaging in allegedly sexually harassing behavior was in February of 1999, when Plaintiff said, "By the way, Charlie Milam asked me for a kiss and a hug." (Def. Ex. 8, Jones Aff., ¶ 18.)

The parties also dispute whether Jones offered to follow up on the matter. McCain-Sidney recalls that Jones volunteered to investigate (McCain-Sidney Dep. at 94); Jones claims that when she asked McCain-Sidney if she wanted Jones to follow up, Plaintiff said, "no" (Def. Ex. 8, Jones Aff., ¶ 18.). In any event, Jones asked Agnew for his version of the events. She also talked to Milam about his behavior for

45 minutes in a scheduled meeting in her office. (Def. Ex. 8, Jones Aff., ¶¶ 17, 19.)

Thereafter, Jones closely watched Milam and frequently asked McCain-Sidney how she was doing. (Def. Ex. 8, Jones Aff., ¶ 20.) For his part, Milam asked McCain-Sidney if he could take her out to lunch or dinner to "show [her] that [he] didn't mean [her] no harm." (McCain-Sidney Dep. at 100.) Plaintiff acknowledges that Milam was apologizing to her "in his own way." (Id. at 101.) She also concedes that, other than asking her to go to lunch or dinner with him, Milam never did anything to her after the February 8, 1999 incident. (Id.)

In March 1999, as McCain-Sidney's probationary period was coming to an end, George Dellorto ("Dellorto"), Director of Operations and Purchasing and Plaintiff's supervisor, was asked to evaluate her performance. (Def. Ex. 7, Dellorto Aff., ¶ 8.) Before completing the evaluation, Dellorto received a variety of written complaints from employees and other administrators about McCain-Sidney's unfair treatment of subordinates and harassing, unprofessional management style, one of which developed into a rather antagonistic grievance. (Def. Ex. 7, Dellorto Aff., ¶ 9; Def. Ex. 7E, 8B, 8C.) He ultimately concluded that McCain-Sidney's management and supervision of employees, as well as her professional behavior and attitude, were unsatisfactory. Accordingly, he was unable to recommend her continued employment beyond the

probationary period. (Def. Ex. 7D at 3.) She was terminated on May 11, 1999. (Def.'s Brief at 3.)

Almost five months later, on October 5, 1999, McCain-Sidney filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment and retaliatory discharge. (Def. Ex. 2.) After receiving a right-to-sue letter, she commenced this action in federal court on July 5, 2000 (Def. Ex. 1A), claiming (1) "hostile work environment" sexual harassment, (2) sexual discrimination, and (3) retaliatory discharge, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* On November 1, 2000, this Court dismissed McCain-Sidney's allegations of sexual discrimination set forth in Count II and struck Paragraph 27 which claimed gender bias. Presently before the Court is ETHS's motion for summary judgment on the remaining claims.[1] Before we begin our analysis, we shall first address the appropriate legal standard by which to judge the present motion.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

---

[1] McCain-Sidney responded to ETHS's motion for summary judgment; however, her brief did not conform to citation standards. We issued a Minute Order instructing McCain-Sidney to resubmit a brief with proper citations by August 15, 2001. She failed to do so. As a result, we are disregarding her propositions of law that have not been properly cited.

Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In employment discrimination cases, we apply this standard with "added rigor" before granting summary judgment. Mills v. Health Care Service Corp., 171 F.3d 450, 454 (7th Cir. 1999). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 312, 325 (1986). This burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the nonmoving party's case." Id. The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id.

The plain language of Rule 56(c) mandates the entry of summary judgment against a party that fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material

facts," <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the nonmovant," <u>Buscaglia v. United States</u>, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing the record, we must draw all reasonable inferences in favor of the nonmovant; however, "we are not required to draw every conceivable inference from the record--only those inferences that are reasonable." <u>Bank Leumi Le-Israel, B.M. v. Lee</u>, 928 F.2d 232, 236 (7th Cir. 1991). With these principles in mind, we turn to the motion before us.

## DISCUSSION

### I.   Defendant's Motion to Strike

As a threshold matter, ETHS moves to strike five of McCain-Sidney's answers to Defendant's Statement of Material Facts. Of these, only McCain-Sidney's answer to Fact Number 26 has any bearing on the disposition of the case at bar. That fact states as follows:

> Plaintiff told her supervisor, James Agnew, about Charlie Milam's comments, but she did not ask Mr. Agnew to do anything about it because she was told that Charlie did not mean any harm. (Ex. 3, McCain-Sidney Dep., p. 61.) Plaintiff could not identify a specific date concerning the next time Mr. Milam said something to her, but she testified that he would say things like, "you're looking real pretty today, Sidney." He would ask her out; that is, he would ask her to lunch or to dinner, and he invited her over to his church. She declined all offers. (McCain-Sidney Dep., pp. 62-63.)

McCain-Sidney admits the first sentence of the paragraph. However, she denies that she said she was unable to identify a specific date on which Milam next said something to her: "In fact, plaintiff stated that she has notations on her calendar of dates that Milam made remarks to her. (Exh[.] 1 McCain-Sidney Dep. pgs. 61-62[.])" (Pl. Answer ¶ 26.) McCain-Sidney's denial depends on this calendar that allegedly documents the dates of Milam's comments. However, pursuant to Federal Rule of Civil Procedure 37(c), her failure to comply with ETHS's numerous requests to produce the calendar precludes her from now using it to deny evidence of record.

In response to ETHS's motion to strike her answer to Fact Number 26, McCain-Sidney contends that Defendant did not comply with Rule 37. Without further explanation, we fail to see how ETHS has not complied. On the contrary, on November 10, 2000, ETHS's attorney filed a First Request for Production of Documents, which included a request for "copies of any and all of plaintiff's calendars, journals, notebooks or other written data that memorialize any conferences, interviews or meetings relating to any of the allegations of the Complaint." (Def.'s Mot. to Strike, Exh. C ¶ 15.) At McCain-Sidney's deposition on March 27, 2001, Defendant's attorney again asked Plaintiff to produce the calendar. (McCain-Sidney Dep. at 62, 188.) Finally, counsel made a third request, in writing, specifically requesting a copy of the calendar, in a memo dated June 14, 2001. (Def.'s Mot. to Strike, Ex. A.)

In response to ETHS's first request in November of 2000, McCain-Sidney provided a copy of only a single calendar page, dated October 19, 1998, with the notation "meet with Mr. Milam/Rosa 3:30," under which appears the word "canceled." (Def.'s Mot. to Strike, Ex. B.) This enigmatic notation fails to reveal what, if anything, was said on October 19. In fact, if the alleged meeting that was to take place was canceled, it is unclear whether McCain-Sidney even had contact with Milam on that date. In any event, Plaintiff failed to produce any other calendar pages. Accordingly, we grant ETHS's motion to strike McCain-Sidney's answer to Fact Number 26.

## II.    Statute of Limitations

At the outset, we must address ETHS's contention that McCain-Sidney's sexual harassment claims occurring before December 9, 1998 are time-barred. (Def.'s Brief at 4.) Under Title VII, a plaintiff in a deferral state such as Illinois must file an EEOC charge within 300 days of the alleged harassment. 42 U.S.C. § 2000e-5(e); Koelsch v. Beltone Electronics Corp., 46 F.3d 705, 707 (7th Cir. 1995). More specifically, the plaintiff must file her complaint within 300 days of the time that she "knew or should have known of the facts that would support such a charge of discrimination." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 445 (7th Cir. 1994). Failure to do so renders the charge untimely. Koelsch, 46 F.3d at 707.

McCain-Sidney responds to ETHS's charge of untimeliness by characterizing the allegations in her complaint as a "continuing violation." (Pl.'s Brief at 4.) The continuing violation doctrine allows a plaintiff to obtain relief for time-barred acts by linking them to acts within the limitations period. R.R. Donnelley & Sons, 42 F.3d at 445. To succeed under the doctrine, a plaintiff must establish that (1) at least one of the alleged acts of harassment occurred within the relevant limitations period and (2) the allegedly harassing acts are part of an ongoing pattern of harassment. Young v. Will County Dep't of Public Aid, 882 F.2d 290, 292 (7th Cir. 1989). If the plaintiff makes such a showing, the court will treat the combination of acts as one continuous act within the limitations period. Id. (citing Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992)).

McCain-Sidney contends that she was subjected to a "continuing stream of unwanted incidents of sexual harassment" by Milam. (Compl., ¶ 9.) However, she was unable to identify when most of these incidents occurred. As discussed above, although McCain-Sidney claimed to have a calendar with notations of dates on which Milam made allegedly harassing comments to her, she failed to produce the calendar, despite numerous requests by ETHS. However, Plaintiff did identify one date within the statutory filing period on which a specific incident of sexual harassment occurred: on February 8, 1999, Milam asked McCain-Sidney for a hug and a kiss. (McCain-

Sidney Dep. at 67-68.) Thus, the question is whether we should apply the continuing

violation doctrine to link the acts that allegedly took place prior to February 8, 1999

to the act that took place on that date, allowing McCain-Sidney to base her Title VII

claim on all of those acts.

It is well established in the Seventh Circuit that the continuing violation theory

applies to cases in which it would be unreasonable to expect the plaintiff to sue when

the conduct at issue can be recognized as harassment "only in the light of events that

occurred later, within the period of limitations." Galloway v. Gen. Motors Serv. Parts

Operations, 78 F.3d 1164, 1165-1167 (7th Cir. 1996); Selan, 969 F.2d at 565-66. In

contrast, the doctrine is not applicable to cases in which the plaintiff is subjected to a

long, continuous series of harassing acts but it was apparent long before the plaintiff

ultimately sued that she was the victim of sexual harassment. Galloway, 78 F.3d at

1165-1167. While the plaintiff can still file suit in such a case – as long as the most

recent act of harassment occurred within the limitations period – she "cannot reach

back and base her suit on conduct that occurred outside the statute of limitations." Id.

That is, the plaintiff's claim can be based only on the incidents that took place within

the limitations period.

In this case, the continuing violation doctrine does not apply. McCain-Sidney

was aware of the nature of Milam's conduct as it occurred. After he first asked her to

be his girlfriend, an incident that allegedly took place in late October or early November of 1997, McCain-Sidney immediately reported the incident to her supervisor James Agnew. (McCain-Sidney Dep. at 59.) In fact, she repeatedly complained to Agnew about Milam's remarks and invitations, telling Agnew that he "need[ed] to explain to Mr. Milam that what he's doing is harassing me." (Id. at 72.) Further, McCain-Sidney knew that it was possible, both at ETHS and in general, to seek redress for sexually harassing conduct. She was aware that complaints of sexual harassment had to be made to Janice Jones, the Director of Personnel at ETHS, and she testified that she told Agnew in December of 1997 that she was going to talk to Jones about Milam's conduct. (Id. at 103.) Moreover, McCain-Sidney' was no stranger to the process required to file discrimination claims, as she had filed a charge of sexual harassment against a former employer in the past. (Id. at 39-41.)[2]

A plaintiff alleging a "hostile work environment" cannot procrastinate. Shanoff v. State of Ill. Dep't of Human Services, 258 F.3d 696, 703 (7th Cir. 2001). She must sue as soon as it is reasonable for her to realize that the harassment at issue has created an insufferable working environment. Galloway, 78 F.3d at 1166. In the case at bar,

---

[2] Plaintiff failed to address any of these facts in her brief, or any others that might support her claim of a continuing violation. Instead, she noted merely that she has met the requirements of the doctrine because she identified at least one present violation. (Pl.'s Brief at 6.)

the allegedly harassing conduct that occurred before the end of the limitations period was sufficient to notify McCain-Sidney that she may have had a colorable claim under Title VII. Thus, while she is free to base her Title VII claims on conduct that occurred after December 9, 1998, she cannot take advantage of the continuing violation doctrine to reach back and include conduct that took place before that date.

## III. Sexual Harassment

For McCain-Sidney's claim of a hostile work environment to be actionable under Title VII, the conduct of which she complains must be "sufficiently severe or pervasive as to alter the conditions of [her] employment and create an abusive working atmosphere." R.R. Donnelley & Sons, 42 F.3d at 443 (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). Accordingly, in order to prevail, she must prove that, as a result of Milam's alleged conduct, her working environment was both objectively and subjectively hostile. Adusumilli v. City of Chicago, 164 F.3d 353, 361 (7th Cir. 1998) (citing Harris v. Forklift Sys., Inc. 510 U.S. 17, 21 (1993)). To determine whether McCain-Sidney has satisfied this standard, we must consider the totality of the circumstances, including "the frequency of the [harassing] conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [McCain-Sidney's] work

performance." Farragher v. City of Boca Raton, 524 U.S. 775, 787-788 (1998) (quoting Harris, 510 U.S. at 23).

That McCain-Sidney found Milam's conduct offensive is indisputable. However, the alleged act on which she can base her claim is *objectively* not severe or pervasive enough to render her work environment hostile. McCain-Sidney alleges that Milam subjected her to a "continuing stream of unwanted incidents of sexual harassment." (Compl., ¶ 9.) However, as discussed above, she was unable to identify the date of any of these alleged incidents, other than the one that occurred on February 8, 1999. Rather than pointing to specific documentary evidence to support her contention, she relied on the pleadings. Celotex Corp. v. Catrett, 477 U.S. 312, 325 (1986). Accordingly, as necessitated by the statute of limitations, her suit may not be based on Milam's conduct and remarks prior to December 8, 1998. This leaves just one incident that McCain-Sidney would have us believe constituted sexual harassment: on February 8, 1999, Milam asked McCain-Sidney for a hug and a kiss. (McCain-Sidney Dep. at 67-68.) Considering all of the circumstances, we are not persuaded that Milam's alleged conduct, objectively speaking, rose to the level of actionable sexual harassment. The conduct, while unprofessional and inappropriate, consisted of a single incident, after which Milam no longer bothered McCain-Sidney. Nor did he ever touch her, threaten her, or humiliate her.

Moreover, our caselaw has previously held that similar incidents of misconduct will not support a hostile work environment claim. <u>See Weiss v. Coca-Cola Bottling Co.</u>, 990 F.2d 333, 337 (7th Cir. 1993) (holding that several episodes of unwanted touching, attempts to kiss, putting "I love you" signs in the work area, and asking plaintiff for dates were insufficient to sustain a cause of action); <u>Saxton v. American Tel. & Tel. Co.</u>, 10 F.3d 526, 533-534 (7th Cir. 1993) (holding that two incidents involving inappropriate comments and impermissible touching did not amount to a hostile work environment). Similarly, in the case at bar no reasonable jury could find that Milam's comment created a hostile working environment.

Alternatively, even if Milam's comment could be reasonably interpreted as sexual harassment, McCain-Sidney's claim must fail because she has not demonstrated that ETHS failed to take immediate and appropriate corrective action upon learning of the harassment. In co-employee harassment cases, an employer is liable for acts of sexual harassment in the workplace only if the employer knew or should have known of the conduct, unless it can show that it took prompt and appropriate remedial action. <u>Guess v. Bethlehem Steel Corp.</u>, 913 F.2d 463, 464 (7th Cir. 1990); <u>R.R. Donnelley & Sons</u>, 42 F.3d at 444 (citing <u>Juarez v. Ameritech Mobile Communications, Inc.</u>, 957 F.2d 317, 320 (7th Cir. 1992). Thus, an employer's legal duty "will be discharged if it takes reasonable steps to discover and rectify" the sexually harassing acts of its

employees. <u>Parkins v. Civil Constructors of Ill., Inc.</u>, 163 F.3d 1027, 1032 (7th Cir. 1998) (citing <u>Perry v. Harris Chernin, Inc.</u>, 126 F.3d 1010, 1013 (7th Cir. 1997)).

ETHS claims that the School District can be found liable only for the alleged conduct for which it was on notice. (Def.'s Brief at 9.) While this contention is accurate, the issue of notice is not in dispute in this case. McCain-Sidney's suit relies solely on the February 8, 1999 incident, and the parties agree that Plaintiff notified Jones of Milam's conduct on that date shortly after the incident occurred.

What is at issue in the case at bar is whether ETHS, upon notice of Milam's behavior, took immediate and appropriate remedial action. An employer's response to allegations of employee harassment must be "reasonably calculated to prevent further harassment," given the specific facts of the case at issue. <u>McKenzie v. Ill. Dep't of Transp.</u>, 92 F.3d 473, 480 (7th Cir. 1996). Courts must decide whether the employer's "total response" was reasonable under the circumstances. <u>Id.</u> The reasonableness of the response hinges in part on the seriousness of the harassment alleged. <u>Baskerville v. Culligan Int'l Co.</u>, 50 F.3d 428, 432 (7th Cir. 1995).

The record shows that the ETHS took prompt and appropriate corrective action once it was put on notice of Milam's conduct. After McCain-Sidney reported to Jones that Milam had asked her for a hug and a kiss, Jones proceeded to investigate Plaintiff's complaint and to follow-up with both Milam and McCain-Sidney. Jones confirmed the allegation of the incident with Agnew. (Def. Ex. 8, Jones Aff., ¶ 19.)

- 16 -

She then spoke with Milam for almost an hour in a scheduled meeting in her office about the inappropriateness of his conduct. (Def. Ex. 8, Jones Aff., ¶ 19.) Thereafter, Jones closely monitored Milam and asked McCain-Sidney how she was doing whenever Jones saw her. (Def. Ex. 8, Jones Aff., ¶ 20.)

McCain-Sidney claims that ETHS took no corrective action against Milam. (Pl.'s Brief at 7.) However, she fails to respond to any of the facts set forth above, nor does she offer any evidence to support her contention.[3] In fact, McCain-Sidney acknowledged in her deposition that she was aware that Jones had spoken to Milam about the incident. (McCain-Sidney Dep. at 99.) Further, she conceded that after she reported the incident to Jones, Milam apologized to her, albeit in "his own way." (Id. at 101.) Finally, McCain-Sidney admitted that Milam's harassing behavior ceased once she complained to Jones. (Id.) Plaintiff did not offer the slightest possible explanation as to why Milam made no further advances toward her after Jones had been notified of his conduct.

In sum, the record does not reasonably support an inference that Milam's misconduct was so severe or pervasive that it created a hostile work environment within the meaning of Title VII. Nor does the record reveal a material factual dispute

---

[3] Under Local Rule 56.1(b)(3)(B), all material facts set forth in the moving party's statement of facts is deemed admitted unless controverted by the non-moving party.

as to the timeliness or efficacy of ETHS's remedial measures once the School District was notified of McCain-Sidney's concerns. Thus, ETHS is entitled to summary judgment on Count I of McCain-Sidney's claim.

## IV. Retaliation

ETHS also seeks summary judgment in its favor on McCain-Sidney's retaliation claim. In order to establish a *prima facie* case of retaliatory discharge, McCain-Sidney must show that (1) she engaged in statutorily protected expression, (2) she suffered an adverse employment action, and (3) there is a causal link between the protected expression and the adverse employment action. Miller v. Am. Family Mut. Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000); Pafford v. Herman, 148 F.3d 658, 670 (7th Cir. 1998). If she establishes a prima facie case, then under the McDonnell Douglas burden-shifting formula, ETHS must articulate a legitimate, nondiscriminatory reason for its actions. Pafford, 148 F.3d at 670. Should ETHS articulate such a reason, the burden shifts back to McCain-Sidney to show that the reason is merely a pretext for retaliation. Id.

ETHS accurately contends that McCain-Sidney cannot use her EEOC charge to satisfy the protected expression requirement of her retaliation claim because she filed it months after she was discharged. Instead, Plaintiff can rely only on the informal complaint she made to Jones in February of 1999. The Seventh Circuit has not yet addressed the issue of whether informal complaints enjoy statutory protection. Krause

v. City of LaCrosse, 246 F.3d 995, 1000 (7th Cir. 2001). However, because McCain-Sidney failed both to (1) establish a causal link between her complaint and her termination and (2) show that the reasons proffered by ETHS were pretexts for discrimination, we need not rule on the issue of whether Plaintiff's informal complaint constituted protected expression.

To establish a causal link between her complaint and her termination, McCain-Sidney must show that ETHS would not have terminated her "but for" her complaint about Milam. Klein v. Trustees of Ind. Univ., 766 F.2d 275, 281 (7th Cir. 1985). Specifically, a plaintiff can usually show such a link by presenting evidence that the termination occurred on "the heels of [a] protected activity." Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1458 (7th Cir. 1994). ETHS argues that McCain-Sidney cannot establish a causal link, as she was provided with numerous written warnings that she was at risk of being terminated beginning in January of 1998, long before she complained to Jones on February 8, 1999. (Def.'s Brief at 12-13; Def. Ex. 7B, 7C, 7E, 8B, 8D, 8F.) McCain-Sidney responds that she began making complaints of sexual harassment to Agnew as early as October 1997. (McCain-Sidney Dep. at 58-61.) She also asserts that from that time until February 1999, she made complaints about Milam to Dellorto, Agnew, and Jones. Thus, McCain-Sidney implies that her complaints preceded management's written warnings and that, accordingly, it was her registration of these complaints that caused her to be terminated.

We are not persuaded by this argument. First, the mere fact than an act preceded

another does not necessarily lead to the conclusion of causation without further

evidence. More significantly, the record shows that McCain-Sidney complained to

Dellorto just once, in February of 1999. (Def. Ex. 7, Dellorto Aff., ¶ 11; McCain-

Sidney Dep. at 73-74, 78.) Similarly, although the parties dispute the number of

meetings between Jones and McCain-Sidney, Plaintiff testified that she first

complained to Jones about Milam's behavior in January or February of 1999. (McCain-

Sidney Dep. at 80.) As for Agnew, that McCain-Sidney may have made numerous

complaints to him early on does not satisfy the causal link requirement for Plaintiff's

retaliation claim. First, there is no evidence that Agnew had any authority to terminate

McCain-Sidney's employment. Indeed, none of the written warnings or any of the

other correspondence in the record came from Agnew. Further, he made it clear that

he would not pass the complaint about Milam onto Jones, the point person at ETHS

who had the authority to resolve it. (McCain-Sidney Dep. at 60-61, 72.) Thus, before

January or February of 1999, the only person to whom McCain-Sidney complained was

Agnew, an employee who did not refer the complaint to anyone else and had no power

to discharge her. Accordingly, McCain-Sidney's frequent complaints to Agnew

beginning in October of 1997 could not have logically caused her termination.

By referencing a number of defense exhibits, McCain-Sidney endeavors to draw

several other inferences with respect to causation, none of which enjoys any

evidentiary support. For example, McCain-Sidney points to several letters that focus on her alleged violation of the School District's residency policy. (Def. Ex. 7B (group), 7C.) As these letters were received less than a month and a half after she made her first complaint about Milam to Agnew, McCain-Sidney would have us believe that the residency policy issue was ETHS's attempt to terminate her for her complaints. There is not a shred of evidence in the record linking the policy violation proceedings with either McCain-Sidney's complaints about Milam or her alleged discharge.

Plaintiff also contends that a grievance action instigated against her by Milam on behalf of Rose Arreola ("Arreola"), one of the custodians, in an effort to "get back at" McCain-Sidney for voicing complaints against him, was an attempt to effectuate her termination. (Pl.'s Brief at 10.) However, there is no evidence that Milam had the authority to influence management's firing decisions. Further, as union steward, it was Milam's job to institute grievance suits for custodians with complaints. A written complaint from Arreola establishes that she truly believed that she had been inequitably treated by McCain-Sidney. (Def. Ex. E1.) In addition, prior to Milam's comment on February 8, 1999, whenever McCain-Sidney confronted him about his conduct, Milam always contended that he was just joking around. (McCain-Sidney Dep. at 61.) He did not get angry about McCain-Sidney's complaints until after Jones met with him about

that particular incident. (Id. at 93.) That meeting took place well after the Arreola grievance had been settled.

Further, McCain-Sidney claims that she did not receive a poor performance evaluation until shortly after she complained to Jones about the February 8, 1999 incident. (Pl.'s Brief at 10.) In fact, she was evaluated on March 23, 1999. (Def. Ex. D.) As McCain-Sidney's probationary period was to end on April 20, 1999, there is nothing objectively suspect about the timing of the evaluation. Without evidence to the contrary, a reasonable finder of fact could not conclude that McCain-Sidney was evaluated only after and because she lodged a complaint about Milam to Jones.

Finally, McCain-Sidney attempts to establish causation by pointing to the fact that Jones failed to prepare a written report of her complaint against Milam. In addition, she notes that during Jones' deposition, Jones denied any other reports of sexual harassment from the custodial department when, in fact, two employees had registered such complaints to her. Without explication or clarification from McCain-Sidney, these facts do not advance her case.

Alternatively, even if McCain-Sidney were able to establish a *prima facie* case of retaliation, her claim must still fail since the School District articulated legitimate, nondiscriminatory reasons for the decision not to recommend her for continued employment. The central reasons given for McCain-Sidney's discharge were her deficient management and supervision of subordinates and her unprofessional behavior

and attitude. (Def. Ex. 7D.) These criticisms were raised well before McCain-Sidney registered a complaint with Jones about Milam's conduct. Indeed, she was provided with more than ten written warnings about her job performance, beginning in January of 1998. (Def. Ex. 7B (group), 7C, 7E (group), 8B, 8D, 8F.)

Dellorto, charged with assessing McCain-Sidney's work, based his decision on his personal evaluation of Plaintiff's performance, as well as on complaints he had received about McCain-Sidney from her subordinates, co-employees, and other ETHS personnel. The complaints ranged from comments about McCain-Sidney's uncooperative attitude to charges that she improperly trained employees, showed favoritism, asked subordinates to drive her home during breaks, and solicited money from employees. (Def. Ex. 7E (group).) Dellorto presumably talked to McCain-Sidney about these allegations and suggested that she attend a workshop for new supervisors. (Def. Ex. 7E.)

In an attempt to show that the reasons ETHS articulated for her termination were merely pretextual and unworthy of credence, McCain-Sidney presents her own assertions concerning the relative quality of her work, a letter from her subordinates praising her supervisory skills and professionalism, and a letter from an ETHS supervisor commending her leadership qualities. (Pl. Ex. 6A-6B.) In cases of this nature, the Seventh Circuit has observed that the court does "not sit as a super-personnel department that reexamines an entity's business decisions." Dale v. Chi.

Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986). Thus, we do not decide whether ETHS exercised sound business judgment. Id. Rather, we determine only whether ETHS's discharge decision was based on performance-related considerations and was genuinely and honestly made. Williams v. Williams Electronics, Inc., 856 F.2d 920, 924 (1988).

McCain-Sidney's self-interested statements about her abilities are not in themselves sufficient to raise a genuine issue of material fact. Dale, 797 F.2d at 464-465. Further, the letters from her subordinates and the ETHS supervisor do not significantly help her cause. Indeed, the relevant case law affords little weight to assertions by co-workers or supervisors that tend to corroborate a plaintiff's own opinion of satisfactory job performance. Dey, 28 F.3d at 1460. Such statements do not shed any light on whether ETHS genuinely based its decision to discharge McCain-Sidney on performance-related considerations. Id.

For summary judgment purposes, McCain-Sidney must present evidence from which a reasonable finder of fact could infer that ETHS lied about its articulated reasons for her dismissal. Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 (7th Cir. 1994). If the sole reasons that ETHS proffered for discharging McCain-Sidney are untrue, then the inference that the real reason was unlawful can be rationally made. Id. McCain-Sidney has failed to present substantial evidence to prove that, in addition to ETHS's articulated reasons, a discriminatory motive was a deciding

factor. Nor has she shown that ETHS's offered reasons are not worthy of credence. As a reasonable factfinder could not infer that ETHS concocted the reasons for McCain-Sidney's termination, ETHS's motion for summary judgment on Count III of McCain-Sidney's claim is granted.

## CONCLUSION

For the foregoing reasons, we grant Defendant's motion for summary judgment in its entirety.

Charles P. Kocoras
United States District Judge

Dated: _____September 17, 2001_____